DAVID E. WEISS (SBN 148147)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:     (415) 543-8700
Facsimile:      (415) 391-8269
Email:          dweiss@reedsmith.com

JOHN N. ELLISON (*pro hac vice* petition to be filed)
SHRUTI D. ENGSTROM (*pro hac vice* petition to be filed)
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
Telephone:     (215) 851-8100
Facsimile:      (215) 851-1420
Email:          jellison@reedsmith.com
                 sengstrom@reedsmith.com

Attorneys for Plaintiff
TREES, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TREES, LLC, a Delaware citizen , <br><br> Plaintiff, <br><br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts corporation; LIBERTY INSURANCE CORPORATION, a Vermont corporation; and DOES 1 through 10, <br><br> Defendants. | Case No.:  3:17-cv-4774 <br><br> Related Case No. 3:16-cv-07365-JD <br><br> **PLAINTIFF TREES, LLC'S COMPLAINT AGAINST DEFENDANTS LIBERTY MUTUAL FIRE INSURANCE COMPANY AND LIBERTY INSURANCE CORPORATION FOR BREACH OF CONTRACT, DECLARATORY RELIEF, AND TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Complaint Filed: August 15, 2017 |

Plaintiff Trees, LLC. ("Trees"), by and through its undersigned counsel, hereby files this Complaint  against Defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Liberty Insurance Corporation ("Liberty"), for Breach of Contract; Declaratory Relief; and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, and avers as follows:

## **NATURE OF THIS LAWSUIT**

1. This is a breach of contract and bad faith action by Trees arising out of Liberty Mutual and Liberty's (collectively, the "Liberty Mutual Defendants") self-interested decisions to protect their own funds while sacrificing the interests of its Named Insured policyholder, Trees. Trees and Pacific Gas & Electric Company ("PG&E") are defendants in consolidated proceedings known as the *Butte Fire* Litigation in California State Court in Sacramento brought by over 2000 plaintiffs. The *Butte Fire* Litigation arose from a wildfire on September 9, 2015, known as the Butte Fire. Trees was a contractor of PG&E at the time of the Butte Fire pursuant to an agreement between Trees and PG&E (the "Trees/PG&E Agreement"). Pursuant to the Trees/PG&E Agreement, Trees named PG&E as an Additional Insured under Trees' insurance policies with the Liberty Mutual Defendants.

2. As an additional insured, PG&E demanded that the Liberty Mutual Defendants provide it with a defense to the underlying actions pending in Sacramento, along with other demands.

3. The Liberty Mutual Defendants ultimately accepted PG&E's tender and have paid substantial defense bills from PG&E's underlying defense counsel as a result. PG&E's defense counsel continue to incur substantial defense bills in the underlying actions that the Liberty Mutual Defendants would be required to pay unless they could find a way to cut off their obligations.

4. The Liberty Mutual Defendants prematurely and improperly spent indemnity limits under two insurance policies purchased by Trees' parent company in order to terminate an unknown and possibly non-existent obligation to an additional insured entity, even though it remained unclear at the time the Liberty Mutual Defendants made the improper indemnity payments that any such indemnity obligation would ever be owed. At the same time, and as the Liberty Mutual Defendants were repeatedly advised by their Named Insured, Trees continues to need access to the insurance coverage that the Liberty Mutual Defendants have attempted to exhaust as Trees remains a defendant in the *Butte Fire* Litigation.

COMPLAINT

5.     Although the issues of liability and culpability remained open in the underlying lawsuits, the Liberty Mutual Defendants sought to protect their own funds, while sacrificing prematurely and improperly the interests of their Named Insured, through voluntary and gratuitous purported indemnity payment to PG&E. In addition, as a result of the premature and improper indemnity payment on behalf of PG&E, the Liberty Mutual Defendants have also wrongfully claimed that they have no further obligation to provide for and fund the PG&E's defense in the underlying actions, thereby presumably trying to shift improperly that financial obligation to Trees due to indemnity obligations running from Trees to PG&E that were potentially triggered if the Liberty Mutual Defendants stopped defending PG&E.  On August 11, 2017, the trial court in the *Butte Fire* Litigation granted summary adjudication in favor of Trees and ruled that the *Butte Fire* did not arise out of Trees' performance of the Trees/PG&E Agreement, confirming that the Liberty Mutual Defendants prematurely sacrificed Trees' insurance limits to protect their own funds.  As a result, Trees now brings this Complaint against the Liberty Mutual Defendants.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction to hear this case under 28 U.S.C. §1332, based on complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000 exclusive of costs and interest.

7.     The Court has personal jurisdiction over Defendants because they do business in this District.

8.     Venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

9.     Trees is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Texas, and it does business in the State of California.

10.     As a limited liability company, Trees' sole member is Utility Vegetation Services, LLC, organized under the laws of the State of Delaware, with its principal place of business in Pennsylvania.

11.     Liberty Mutual is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Massachusetts, and it does business in this State.

12.     Liberty is a corporation organized under the State of Illinois with its principal place of business in Massachusetts, and it does business in this State.

## **FACTUAL BACKGROUND**

13.     This gravamen of this Complaint concerns the Liberty Mutual Defendants' breach of contract and bad faith claims handling behavior in responding to and attempting to resolve the separate claims of Trees and PG&E relating to the underlying *Butte Fire* Litigation.

14.     As a result of the *Butte Fire* Litigation, separate claims were made against the Liberty Mutual Defendants by Trees and PG&E pursuant to a Commercial General Liability insurance policy that was sold to the parent company of Trees, the Asplundh Tree Expert Co. ("Asplundh"), by Defendant Liberty Mutual (the "Primary Policy"), and a Commercial Liability Umbrella insurance policy that was sold to Asplundh by Defendant Liberty (the "Umbrella Policy," and together, the "Liberty Policies").

15.     Trees is a Named Insured under both Liberty Policies.

16.     The Liberty Mutual Defendants owe Trees an obligation to act in good faith and not to favor its interests or the interests of other insureds over the interests of Trees.

17.     Additionally, PG&E made claims against Trees pursuant the Trees/PG&E Agreement under which Trees performed tree trimming services.  PG&E further alleged that the Agreement entitled it to the status of an Additional Insured under the Liberty Policies.

18.     Trees at all times has denied its responsibility for the Butte Fire, and has aggressively defended the claims against it in the *Butte Fire* Litigation.  Trees has further denied the broad scope of liability asserted by PG&E against Trees under the Trees/PG&E Agreement and under the Liberty Policies.

19.     Accordingly, Trees consistently and repeatedly demanded that the Liberty Mutual Defendants *not* pay policy proceeds to indemnify PG&E for settlements of any part of the *Butte Fire* Litigation absent a factual finding that PG&E's liability arose out of, and was caused by some malfeasance in Trees' work.

20.     Instead, Trees has demanded that the Liberty Mutual Defendants must defend both Trees and PG&E from the underlying claims in the *Butte Fire* Litigation, based on the underlying allegations, but should not pay indemnity to PG&E because Trees was not responsible for the fire.

21.     Additionally, Trees pointed out to the Liberty Mutual Defendants that it would be improper and solely in their self-interest (and against that of Trees) to pay any indemnity payments on behalf of PG&E under the Liberty Policies, because doing this was improper given the absence of evidence or findings that Trees was responsible for the Butte Fire. Such payment(s) would serve only to arguably end prematurely the expensive defense obligation the Liberty Mutual Defendants owe to PG&E. The end result of that would be to potentially foist that obligation onto Trees.

22.     At present, no findings have been made that Trees was responsible in any way for the Butte Fire. In fact, on August 11, 2017, the Superior Court of California in the County of Sacramento granted summary adjudication in Trees' favor and ruled that the Butte Fire did not arise out of Trees' performance of the Trees/PG&E Contract. Moreover, even before this recent ruling, Trees had been voluntarily dismissed from multiple underlying lawsuits, because Trees was not responsible.

23.     Instead, another company, namely ACRT, Inc. ("ACRT"), as well as PG&E, was operating near the location where the Butte Fire originated, after Trees completed its work. ACRT had a separate contract with PG&E and purchased separate insurance to cover liabilities arising out of its work, including liabilities of PG&E, and it remains a defendant in those lawsuits in which Trees has been dismissed.

24.     Despite demands by Trees that the Liberty Mutual Defendants not make any indemnity payments to PG&E at the expense of Trees, because doing so would constitute bad

faith, the Liberty Mutual Defendants voluntarily and gratuitously made substantial indemnity payments to PG&E for settlements in the *Butte Fire* Litigation.  In doing so, the Liberty Mutual Defendants misappropriated $5 million from Trees through the withdrawal of funds from a Trees funded account for deductibles, purportedly paid the Primary Policy's limits of $7.5 million, and purportedly paid a further $2.5 million of the limits of liability of the Umbrella Policy.  These actions represent a bad faith effort by the Liberty Mutual Defendants to protect their funds, by cutting off their unlimited defense obligation to PG&E, while sacrificing the interest of its Named Insured by foisting defense obligations onto the back of Trees, contrary to the promises in the Liberty Policies and contrary to the duty of good faith and fair dealing that is implied in every insurance policy.

## TREES/PG&E AGREEMENT

25.    Trees and PG&E entered into the Trees/PG&E Agreement for the pruning and removal of trees and brush, by which Trees agreed to serve as a sub-contractor for PG&E.  A true and correct copy of the Trees/PG&E Agreement is attached hereto as Exhibit "A."

26.    The Trees/PG&E Agreement required Trees to perform certain services in Amador, California, pursuant to specifications defining Trees' scope of work, and in accordance with instructions provided by PG&E under its Vegetation Management Program.

27.    The specifications to the Trees/PG&E Agreement required Trees to follow a process for performing its work, such that before PG&E assigns work to Trees, "the PG&E Pre-Inspection Contractor will identify and prescribe required tree pruning and tree/brush removal" work to be performed by Trees.

28.    The Trees/PG&E Agreement also includes an insurance procurement provision requiring Trees to provide PG&E Additional Insured status, with certain conditions and limitations.  The Insurance Procurement Provision in the Trees/PG&E Agreement provided in pertinent part:

> 10. INSURANCE
> Contractor shall maintain the following insurance coverage. Contractor is also responsible for its Subcontractors maintaining sufficient limits of the same insurance coverage.

10.2 COMMERCIAL GENERAL LIABILITY

10.2.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form…

10.2.2 The limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage and personal injury and products/completed operations. Defense costs shall be provided as an additional benefit and not included within the limits of liability. Coverage limits may be satisfied using an umbrella or excess liability policy.

10.2.3 Coverage shall: (i) By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of Work performed by or for the Contractor, including completed operations; (ISO Form CG 2010 11/85 or equivalent). If the CGL policy includes "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement: "PG&E, its affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement"; (ii) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; and (iii) include a severability of interest clause. The additional insureds shall fully cooperate with the Contractor on any Claim.

. . .

29.     Trees satisfied this Insurance Procurement Provision by purchasing the Primary Policy and Umbrella Policy discussed in greater detail below.

**THE PRIMARY POLICY**

30.     Liberty Mutual issued the Primary Policy No. TB2-631-004328-035 to Asplundh for the policy period from August 1, 2015, to August 1, 2016. The per occurrence and general aggregate limit of the Primary Policy is $7,500,000. A true and correct copy of the Primary Policy is attached hereto as Exhibit "B."

31.     The Primary Policy insures Trees as a Named Insured pursuant to the Broad Form Named Insured-Majority Interest endorsement.

32.     In the Primary Policy, coverage is provided at Coverage A, which includes a duty to defend, and a promise to pay, "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy at Section I(1)(a).

33. Although the Primary Policy contains an exclusion for "Contractual Liability," there is an exception for liability for damages, "[a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." Policy at Section I(2)(b)(2). An "insured contract" is defined at Section V(9)(f) of the Policy as, "[t]hat part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of a contract or agreement." The Trees/PG&E Agreement constitutes an Insured Contract under the Primary Policy.

34. The Primary Policy contains an "additional insured" endorsement, titled "Blanket Additional Insured," that provides "Additional Insured" coverage where required by contract. This endorsement amends Section II of the Policy, "Who Is An Insured," to include as an Additional Insured "any person or organization for whom you have agreed in writing to provide liability insurance." The endorsement further provides:

> The insurance provided by this amendment:
>
> 1. Applies only to "bodily injury" or "property damage" arising out of (a) "your work" . . .
>
> 2. Applies only to coverage and minimum limits of insurance required by the written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy; and
>
> 3. Does not apply to person or organization for whom you have procured separate liability insurance while such insurance is in effect, regardless of whether the scope of coverage or limits of insurance of this policy exceed those of such other insurance or whether such other insurance is valid or collectible.
>
> The following provisions also apply:
>
> 1. Where the applicable written agreement requires the insured to provide liability insurance on a primary, excess, contingent, or any other basis, this policy will apply solely on the basis required by such written agreement and Item 4. Other Insurance of Section IV of this policy will not apply.
>
> . . .
>
> 2. If any other additional insured endorsement applies to any person or organization and you are obligated under a written agreement to provide liability insurance on a primary, excess, contingent, or any other basis for that additional

insured, this policy will apply solely on the basis required by such written agreement and Item 4. Other Insurance of Section IV of this policy will not apply, regardless of whether the person or organization has available other valid and collectible insurance.

35. Pursuant to the above policy provisions and contractual requirements, PG&E is insured under the Primary Policy as an Additional Insured for "bodily injury" and "property damage" arising out of "your work" as defined, meaning work performed by Trees for PG&E. Significantly, however, PG&E does not have indemnity coverage under the Primary Policy to the extent the damages at issue in the *Butte Fire* Litigation do not arise out of the work of Trees.

36. Defense costs are an additional benefit of the Primary Policy and are payable in addition to the limit of liability of $7.5 million until that limit of liability is exhausted. The Liberty Mutual Defendants are responsible for defending both Trees and PG&E pursuant to their duties to defend until it is finally determined that they are not liable for the *Butte Fire* Litigation, or until the limits of liability are properly eroded by payment of covered claims.

37. Because Liberty Mutual improperly, prematurely and in bad faith exhausted the limit of liability of the Primary Policy by indemnity payments to PG&E where there was no showing of liability arising out of work performed by Trees, Liberty Mutual remains responsible for the defenses of both PG&E and Trees pursuant to the Primary Policy. Liberty should remain responsible for the defenses of PG&E and Trees pursuant to the Umbrella Policy in the event the Primary Policy should become eroded by way of a proper indemnity payment or payments.

38. The Primary Policy further contains an endorsement titled "Deductible-Damages and Supplementary Payments Damages Within the Deductible Erode the Policy Limits." The endorsement states that the Deductible Amount is $5,000,000 and provides, in pertinent part:

A.     DEDUCTIBLE
DAMAGES AND SUPPLEMENTARY PAYMENTS ERODE DEDUCTIBLE

You are responsible, up to the Deductible Amount shown in the Schedule, for the total of:

1.     All damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus

2.     All SUPPLEMENTARY PAYMENTS

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence" …

…

B. EFFECT OF DEDUCTIBLE ON LIMITS OF INSURANCE

1. The Each Occurrence Limit,… and any applicable aggregate limits of insurance are reduced by the amount of damages, as referred to in Paragraph A. above, paid or payable by you within the deductible…

…

C. CONDITIONS

4. Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or "suit" against you, … apply irrespective of application of this deductible endorsement.

39. Liberty Mutual withdrew $5 million from an account funded by Trees for deductible payments to pay for a portion of Trees' defense costs, and PG&E's defense costs.

40. The payment of defense costs is not the payment of Supplementary Payments, and under the plain language of the endorsement, Liberty Mutual's right and duty to defend applies irrespective of the application of the deductible endorsement.

41. Liberty Mutual's duty to pay defense costs should not be borne by Trees in the form of a deductible, where the endorsement clearly states that Liberty Mutual's right and duty to defend applies irrespective of the application of the deductible endorsement.

42. Liberty Mutual misappropriated $5 million from Trees' in the form of a deductible for payment of defense costs for both Trees and PG&E, despite the language of this endorsement which requires that Liberty Mutual's rights and duties with respect to its defense obligation apply irrespective of the endorsement.

## THE UMBRELLA POLICY

43. Liberty issued the Umbrella Policy No. TH7-631-509747-325 to Asplundh for the policy period from August 1, 2015, to August 1, 2016. The Umbrella Policy provides commercial umbrella liability coverage above the Primary Policy's limits, up to $10,000,000 per occurrence

and in the aggregate.  A true and correct copy of the Umbrella Policy is attached hereto as Exhibit "C."

44.     Under the Umbrella Policy, Trees is a broad-form Named Insured by endorsement.

45.     PG&E is an Additional Insured pursuant to an additional insured endorsement, but PG&E does not have a right to the full limits of the Umbrella Policy.  Instead, to the extent coverage is provided, the Trees/PG&E Agreement and the additional insured endorsements to the Liberty Mutual Policies set an upper limit of indemnity coverage provided to PG&E, namely $10,000,000, which is satisfied by the Primary Policy and a portion of the Umbrella Policy.

46.     Like the Primary Policy, the Umbrella Policy contains an additional insured endorsement, Endorsement No. 3, titled "Additional Insured Limitation," which provides coverage as an "Additional Insured" where a person or organization is included as an Additional Insured under "underlying insurance," but that, "[i]f coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured."  This endorsement also states:

> With respect to insurance afforded to these additional insureds …, if coverage provided to the additional insureds is required by contract or agreement, the most we will pay on behalf of the additional insureds is the <u>minimum amount of insurance</u>:
>
> 1. Required by the contract or agreement less any amounts payable by any "underlying insurance" or otherwise retained; or
>
> 2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.
>
> [emphasis added]

47.     Accordingly, the Liberty Policies combined cap the insurance available to PG&E at the amount of $10,000,000, total, as set forth in the Trees/PG&E Agreement.

48.     Additionally, because the Liberty Policies limit responsibility to provide insurance to the extent Trees is required by the Trees/PG&E Agreement to "provide for" PG&E, the Liberty Mutual Defendants' obligations are further limited by the terms of both the contract and the

policies.

49.     Defense costs are an additional benefit of the Liberty Mutual Policies and not included within the limits of liability.  Liberty remains responsible for the defense of Trees and PG&E until the limits of the Umbrella Policy are exhausted properly by good faith payments for covered claims.

## THE *BUTTE FIRE* LITIGATION

50.     PG&E, ACRT and Trees were sued by multiple plaintiffs in relation to the Butte Fire.  Those cases were coordinated, and Master Complaints have been filed that were adopted in whole or in part by all of the underlying plaintiffs (the "Butte Fire Plaintiffs").  True and correct copies of two Master Complaints from the *Butte Fire* Litigation are attached hereto as Exhibits D and E.

51.     As seen in the Master Complaints, the Butte Fire Plaintiffs allege a variety of claims against PG&E, ACRT and Trees.

52.     Trees has consistently denied all of the relevant allegations made against it, and Trees disclaims any responsibility for the Butte Fire.

53.     In fact, recognizing that Trees was not responsible for the Butte Fire, certain of the Butte Fire Plaintiffs have begun voluntarily dismissing Trees from the underlying *Butte Fire* Litigation.  As discussed in greater detail below, Trees had begun securing these voluntary dismissals prior to any decision by the Liberty Mutual Defendants to pay policy proceeds.  Trees made the Liberty Mutual Defendants well aware that it had no liability and these dismissals, as well as Trees' consistent position of a lack of liability for Trees concerning these claims.

54.     The evidence developed in discovery in the *Butte Fire* Litigation demonstrates any underlying liability did not arise from the work of Trees.  Prior to the Butte Fire, pursuant to the specifications to the Trees/PG&E Agreement, the relevant PG&E Pre-Inspection Contractor was ACRT, not Trees.  ACRT is the largest independent utility vegetation management consulting company in the nation.  ACRT performed its work on October 17, 2014, when it identified two black walnut trees, one live oak tree, one blue oak tree, one valley oak tree, and two gray pine

trees for trimming and/or removal. Trees' work began on December 23, 2014, when it trimmed the black walnut and valley oak trees. On January 6, 2015, Trees removed the gray pine trees and trimmed the blue oak tree. Finally, on January 13, 2015, Trees trimmed the live oak tree. Neither ACRT nor PG&E requested that Trees return to the area at any time after January 13, 2015, for further tree trimming or tree removal work, or for any other reason. No hazardous conditions were noted by Trees, and neither ACRT nor PG&E found any deficiencies in the work of Trees.

55. Additionally, representatives of PG&E have testified under oath that Trees was not required to perform additional inspections or perform additional tree removal beyond the scope of its contract and the specifications. Moreover, Trees was not responsible for pre-inspection services or inspection services. Instead, it was ACRT and not Trees that was responsible for air and ground inspection work.

56. In any event, months after Trees' last work, ACRT went back to the site in July 2015, and ACRT did not determine that any relevant trees were hazardous or should be removed or trimmed. Additionally, PG&E itself performed aerial inspections of the area in June and July 2015, and neither PG&E nor ACRT made findings identifying hazards or requiring further work from Trees at any time prior to the Butte Fire months later. The Liberty Mutual Defendants are aware of these facts.

57. On August 11, 2017, the Superior Court of California in Sacramento County ruled that Trees made a prima facie showing that the Butte Fire did not arise of or was not caused by Trees' performance of the Trees/PG&E Agreement. Moreover, the court also ruled that PG&E failed to cite any evidence to make a prima facie showing a dispute in any material fact and that PG&E failed to cite any evidence that the Butte Fire arose out of or was caused by Trees' performance. Thus, Trees' was granted summary adjudication on this issue. The Liberty Mutual Defendants were aware, prior to making voluntary indemnity payments to PG&E, that this motion for summary adjudication was pending in the trial court.

## **THE LIBERTY MUTUAL DEFENDANTS' UNREASONABLE DELAYS IN DEFENDING PG&E CAUSE DEFENSE COSTS TO MOUNT**

58.     PG&E initially brought related insurance coverage litigation against the Liberty Mutual Defendants in November 2016 because, among other things, the Liberty Mutual Defendants were not responding to PG&E's demands to defend it and to pay settlements or judgments on its behalf.  The case was removed to federal court and bears the caption *PG&E v. Liberty Mutual*, et al. Case No. 3:16-cv-07366-JD ("PG&E Coverage Litigation").

59.     At that time, upon information and belief, the Liberty Mutual Defendants failed to accept coverage, deny coverage, or reserve rights as against PG&E's claims for many months. Upon information and belief, although Liberty Mutual responded to PG&E's tender on or about December 3, 2015, Liberty Mutual did not respond with a letter accepting the tender of defense pursuant to a reservation of rights until December 23, 2016, more than a year later.

60.     By that point, upon information and belief, PG&E had already incurred defense costs relating to the *Butte Fire* Litigation in the order of magnitude of approximately $25 million (more than two and a half times as much as the relevant indemnity limit).  Because of their unexplained delay, the Liberty Mutual Defendants lost all control and oversight that they might have exercised over the defense of PG&E.  During the delay, the Liberty Mutual Defendants also failed to take opportunities to negotiate with insurance companies of PG&E, ACRT and others, so as to reduce or share their own liabilities.  To the extent delays of the Liberty Mutual Defendants in responding to PG&E may have resulted in waiver or estoppel concerning various coverage defenses or opportunities for insurance contribution, the Liberty Mutual Defendants must bear the consequences and costs, and not Trees.  Delays, actions and failures to act of the Liberty Mutual Defendants, and the consequences, were entirely self-inflicted.

## **THE LIBERTY MUTUAL DEFENDANTS HUNT FOR AN EXCUSE TO TRANSFER LIABILITIES FROM THEMSELVES TO TREES AND ATTEMPT THEIR SCHEME**

61.     Because of Liberty Mutual's extreme delay in responding to the defense demands of PG&E, the defense costs that PG&E incurred and demanded from the Liberty Mutual

Defendants quickly ballooned to amounts well in excess of the relevant policy limits. Because defense costs are provided as an additional benefit outside of the Liberty Mutual policy's limits, Liberty Mutual and Liberty came to realize they faced substantial, expensive responsibilities to PG&E in addition to Trees, which were likely to continue to mount.

62. To avoid these costs, the Liberty Mutual Defendants began to search for means to end their expensive obligations, and they decided improperly to place their self-interest above their obligations to their policyholder, Trees, and attempt to shift these costs and obligations from themselves to Trees.

63. The Liberty Mutual Defendants have ignored a variety of pieces of correspondence from Trees concerning coverage under the Liberty Policies, demands to pay defense costs, and demands to pay (or not to pay) settlement funds under the Liberty Policies.

64. For example, the Liberty Mutual Defendants ignored a letter from Trees dated June 8, 2016, by which Trees provided information demonstrating that the Butte Fire did not arise out of Trees' work, and explained that therefore, PG&E should not be indemnified by Trees' insurance absent evidence or findings that contradict the known facts. Trees also advised the Liberty Mutual Defendants that they should be tendering claims to the insurers of ACRT and PG&E. The Liberty Mutual Defendants ignored Trees' positions concerning the absence of an indemnity obligation to PG&E; they did not set forth a contrary understanding; and upon information and belief they did not follow up with other insurers concerning contribution or allocation of responsibility for defense costs or settlements.

65. The Liberty Mutual Defendants similarly ignored a letter from Trees dated May 5, 2017, objecting to the payment of a portion of PG&E's defense costs using Trees own funds from Trees' account, and demanding communication with Trees prior to making any further payments to PG&E. The Liberty Mutual Defendants also ignored Trees' follow-up letter dated May 12, 2017, objecting to the Liberty Mutual Defendants unilateral indemnification of $10 million using the limit of the Primary Policy and a portion of the Umbrella Policy.

66.     In the May 5 and May 12, 2017 correspondence, Trees made clear to the Liberty Mutual Defendants that they should not make indemnity payments (or further indemnity payments) on behalf of PG&E because, among other things, there was no finding that liability of PG&E arose out of Trees' work.

67.     The May 5, 2017 correspondence from Trees to the Liberty Mutual Defendants was written immediately after Liberty Mutual made payments to PG&E by withdrawal from an account, funded by Trees.  In addition to the amount paid to PG&E, an amount was withdrawn from this account to pay Trees' own defense costs, and equaled $5 million—the deductible amount under the Primary Policy.  These payments were made using Trees' own funds, but without any advance notification or information provided to Trees for defense costs owed by Liberty Mutual.  At the same time as this unilateral payment, the Liberty Mutual Defendants increased their reserves on another PG&E claim file, but they provided no information regarding any of these actions to Trees.

68.     By failing to provide appropriate notice or knowledge to Trees regarding their actions, which had the potential to impact materially the defense and indemnification benefits provided under the policies, and deplete Trees' own deductible funds, the Liberty Mutual Defendants failed to give at least equal weight to the interests of Trees, and improperly sought to impair Trees' rights to insurance benefits under the Primary Policy and Umbrella Policy.  By acting without notice or the knowledge of Trees, the Liberty Mutual Defendants sought to forestall objections by Trees and appropriate legal action that would prevent the Liberty Mutual Defendants from behaving as they did.

69.     Trees made the Liberty Mutual Defendants well aware that their obligation to provide a potential indemnity to PG&E as an Additional Insured is dependent on a finding of fault against Trees in the underlying cases, but that PG&E has/had no reasonable prospect of proving that its liability arose out of any of Trees' work.  Indeed, the May 5 and May 12, 2017 letters from Trees confirmed to the Liberty Mutual Defendants that Trees had been dropped as a defendant by multiple plaintiffs, and that trials concerning fault were scheduled for the near future.  Trees

reported that as of May 5, 2017, underlying plaintiffs including 69 individual plaintiffs and 30 properties had already dismissed Trees from their claims but continued to pursue cases against PG&E and ACRT, indicating that based on the developments in the case, plaintiffs were starting to agree that Trees' defense as to its liability has significant merit. Given those developments, Trees informed the Liberty Mutual Defendants that there was very little possibility (if not no potential scenario) under which PG&E can establish any right to any indemnity dollars being funded by Liberty Mutual or Liberty as an Additional Insured. At the very least, these facts provided no justification for the payments the Liberty Mutual Defendants made to PG&E or any future payments.

70. Given the Liberty Mutual Defendants' duties to Trees and the outstanding issues regarding fault that would be tried in the near future in the *Butte Fire* Litigation, Trees demanded in the May 5, 2017 correspondence that the insurance companies acknowledge and agree they would be unable to pay indemnity on behalf of any Insured prior to a finding of fault in the underlying cases. Additionally, Trees demanded that the Liberty Mutual Defendants include Trees on future communications with PG&E concerning Trees' insurance policies. Trees also requested further information about the new claim file that was opened by the insurance companies. Finally, Trees requested information about the Liberty Mutual Defendants' pursuit of "other insurance" from the insurance companies of PG&E and ACRT.

71. The Liberty Mutual Defendants disregarded the objections, demands and requests in Trees' May 5, 2017 letter, as well as agreements reached during follow-up telephone conversations between counsel. As expressed in the May 12, 2017 letter, contrary to the demands of Trees and agreements with counsel for the Liberty Mutual Defendants (which should have been unnecessary given the insurers' duties of communication and transparency to its Named Insured), the Liberty Mutual Defendants failed to communicate with Trees prior to making further payments to PG&E. Ignoring clear evidence that no liability arose out of Trees' work, and Trees' demands, the Liberty Mutual Defendants unilaterally paid a further $10 million to PG&E.

72.     By email dated May 22, 2017, Trees requested a response to the May 12, 2017 correspondence from the Liberty Mutual Defendants.

73.     The Liberty Mutual Defendants did not respond to the May 5, 2017 or May 12, 2017 correspondence from Trees, in direct violation of Cal. Code Regs. Tit. 10, § 2695.5(b), until June 7, 2017.

74.     In the June 7, 2017 correspondence, the Liberty Mutual Defendants admitted that on May 12, 2017 a $10 million indemnity payment from Trees' insurance policies was made to PG&E.

75.     The June 7, 2017 correspondence further admitted that the Liberty Mutual Defendants made the payment without a determination as to whether "bodily injury" or "property damage" "arose out of" Trees' work. Rather, the Liberty Mutual Defendants voluntarily paid $10 million to PG&E because the underlying plaintiffs asserted claims that purportedly "arose out of" Trees' work.

76.     The June 7, 2017 correspondence also admitted that the Liberty Mutual Defendants advised PG&E that the Liberty Mutual Defendants' duty to defend was extinguished on May 15, 2017 upon voluntarily paying the $10 million limits.

77.     Upon information and belief, based on the June 7, 2017 correspondence, the Liberty Mutual Defendants voluntarily made indemnity payments to PG&E at that time without obtaining any release from PG&E as against Trees or the Liberty Policies.

78.     Upon information and belief, based on the June 7, 2017 correspondence, the Liberty Mutual Defendants may seek reimbursement of defense costs from PG&E without regard to any potential harm to Trees.

79.     Upon information and belief, the Liberty Mutual Defendants have negotiated a settlement with PG&E as to PG&E's claims for defense and indemnity against Liberty Mutual without regard to any potential harm to Trees.

80.     The payments and actions, described above, made in the face of Trees' objections may have resulted in a material reduction in Trees' available limits of liability and demonstrate

the Liberty Mutual Defendants opted to protect their own interests at the expense of the interests of Trees. By acting in this fashion and tendering disputed amounts to PG&E, by their own admission, the Liberty Mutual Defendants attempted to extinguish Liberty Mutual's and Liberty's defense obligations to PG&E prematurely, and without regard to the fact that there has been no finding of fault or liability to Trees in the underlying cases, nor any limitation on PG&E's claim to further Additional Insured coverage from Liberty or other insurance companies of Trees. These actions prejudice and risk substantial further prejudice to Trees, which the Liberty Mutual Defendants have ignored.

81. The Liberty Mutual Defendants were advised by Trees that their actions in paying PG&E put their own interests above Trees, and Trees further advised that their payments risked exposing Trees (instead of the Liberty Mutual Defendants) to the remainder of PG&E's defense costs, as well as potential liability exposure. Although Trees denies that it has any such exposure for defense or indemnity costs, Trees asserts that Liberty Mutual's and Liberty's attempt to transfer their liabilities to Trees is blatant self-dealing and bad faith conduct that has clearly been designed to ameliorate the insurers' own mistakes in failing to respond to PG&E's demands on a timely basis and failing to seek contribution from other insurers. The June 7, 2017 correspondence plainly demonstrates the Liberty Mutual Defendants' attempts to insulate themselves at the expense of Trees.

82. Prior to the insurers' wrongful indemnity payments, Trees further advised the Liberty Mutual Defendants that if they were concerned about how to respond to the different claims of Trees and PG&E, they could avoid charges of self-dealing or bad faith by using an interpleader as a mechanism. The insurers ignored this advice. Instead, the insurers sacrificed Trees' interests and avoided using an interpleader because doing this would have required Liberty Mutual to continue to pay PG&E's defense costs—expenses that Liberty Mutual and Liberty were attempting to transfer to Trees in bad faith.

83. Although Trees in its May 12, 2017 letter warned Liberty Mutual and Liberty that these actions are *prima facie* acts of bad faith, and demanded a commitment that they would

protect Trees' interests by not impairing Trees' limits of insurance any further and by continuing to pay PG&E's defense costs outside of limits until a determination of fault and/or Additional Insured coverage is made in the underlying cases, the insurers ignored this warning and demand. Indeed, the Liberty Mutual Defendants simply ignored Trees altogether until their attempts to insulate themselves failed as demonstrated by the admission in the June 7, 2017 letter that PG&E still disputed the Liberty Mutual Defendants' position on the Liberty Mutual Defendants' defense and indemnity obligations.

84. Upon information and belief, the Liberty Mutual Defendants' own claim diary documents that the Liberty Mutual Defendants had been deliberating steps to protect their own interests above Trees by extricating themselves from defense and indemnity obligations in relation to the *Butte Fire* litigation.

85. By paying policy proceeds to PG&E without a proper basis at the expense of Trees, the Liberty Mutual Defendants wasted significant portions of their own policyholders' policy limits.

86. The Liberty Mutual Defendants' decision to pay PG&E was self-dealing behavior that benefited themselves rather than their policyholder, Trees, and inappropriately favored one insured (PG&E) over another (Trees). This behavior was not supported by the policies' language or controlling law. Although a continuing (and unlimited) defense obligation was owed to PG&E by the Liberty Mutual Defendants, in the absence of a finding that Trees was responsible for the Butte Fire, there was no valid basis for the Liberty Mutual Defendants to pay for settlements entered by PG&E or judgments against PG&E.

87. By paying policy proceeds to PG&E, the Liberty Mutual Defendants have attempted to exhaust completely the Primary Policy and to erode a significant portion of the Umbrella Policy, in an attempt to end the expensive defense obligation owed to PG&E outside of indemnity limits, and expose Trees to that liability.

88. By disbursing policy proceeds to an Additional Insured, PG&E, at the expense of the policyholder, Trees, and without any notice or explanation to Trees, the Liberty Mutual

Defendants failed to give due consideration to the interests of Trees, acted according to its own self-interests, and have acted and are acting in breach of contract and in breach of duties of good faith, fair dealing and loyalty to their policyholders.

## FIRST CAUSE OF ACTION—BREACH OF CONTRACT AGAINST THE LIBERTY MUTUAL DEFENDANTS

89.    Trees re-alleges and incorporate by reference the averments contained in Paragraphs 1-88, *supra*.

90.    The Liberty Mutual Defendants committed substantial and material breaches of their contractual obligations to Trees, as concerns both the duty to defend and the duty to indemnify.

91.    Trees complied with all of the terms and conditions of the Liberty Policies and performed all other required conditions and obligations under these policies.  Alternatively, Trees is excused from compliance and/or the Liberty Mutual Defendants are estopped from asserting any terms, conditions, or exclusions of the Liberty Policies.

92.    As a direct and proximate result of the Liberty Mutual Defendants' breaches of their policies, Trees suffered substantial monetary damages.

93.    The delay in defending PG&E and confusion caused by the Liberty Mutual Defendants resulted in an increase in the defense costs, expenses and indemnity demands sought by PG&E from the Liberty Mutual Defendants and Trees.  To the extent any increase in costs or alleged liability of the Liberty Mutual Defendants or Trees resulted from delays caused by the Liberty Mutual Defendants, it is the Liberty Mutual Defendants that must bear those increased costs and alleged liabilities.

94.    The withdrawal of funds from Trees' account for defense payments to Trees and PG&E in the amount of $5 million as a "deductible" was in direct contravention of the Primary Policy, and California law, which requires Liberty Mutual to bear that expense, not Trees.

95.    The indemnity payments made by the Liberty Mutual Defendants without notice to Trees, including the subsequent $10 million paid under the Liberty Policies, were voluntary,

gratuitous payments, for which there was no liability under the Liberty Policies, and for which only the Liberty Mutual Defendants are responsible. Among other things, at the time of its payments, the Liberty Mutual Defendants were aware that numerous underlying plaintiffs had withdrawn allegations of fault against Trees, and findings concerning the fault issue were due to be issued in the near future. Despite evidence that payment of indemnity would be gratuitous, the Liberty Mutual Defendants made their unnecessary payment to PG&E without waiting for any findings of fault and without providing notice to Trees or any insurer that may owe contribution for the matter. Consequently, only the Liberty Mutual Defendants can be held responsible for these voluntary payments.

96. Without limitation, the $5 million in Trees' funds that were wrongfully and gratuitously taken by the Liberty Mutual Defendants must be returned to Trees and/or disgorged from the Liberty Mutual Defendants, together with interest.

97. The Liberty Mutual Defendants' payment of $10 million in policy proceeds to PG&E was also gratuitous, and constitutes a breach of the insurers' policies with Trees. As a result, this payment cannot reduce the limits of liability available to Trees under the Liberty Policies.

98. Trees has also incurred, continues to incur, and will in the future incur attorney's fees and expenses to prove its coverage rights under the Liberty Policies. The Liberty Mutual Defendants are liable to Trees for all such fees and expenses, together with interest.

## SECOND CAUSE OF ACTION—DECLARATORY JUDGMENT AGAINST THE LIBERTY MUTUAL DEFENDANTS

99. Trees re-allege and incorporate by reference the averments contained in Paragraphs 1-98, *supra*.

100. Trees seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, of the respective rights and obligations of Trees and the Liberty Defendants under the Liberty Policies.

101.    Pursuant to the terms and conditions of the Liberty Policies and applicable law, the Liberty Mutual Defendants made unnecessary indemnity payments using both the funds of Trees and portions of the limits of liability of Trees' insurance policies, thereby causing harm to Trees and creating uncertainty concerning the insurance rights of the parties.

102.    An actual and justiciable controversy exists between Trees and the Liberty Mutual Defendants concerning the Liberty Policies, which controversy may be determined by declaratory judgment.  Without limitation, Trees seeks a judicial declaration that the amounts paid by the Liberty Mutual Defendants do not reduce policy limits available to Trees; the deductible should be repaid to Trees; liability payments should not have been paid by the Liberty Mutual Defendants to PG&E absent a judicial finding that liability arose out of the work of Trees; and the Liberty Mutual Defendants have a continuing obligation to defend Trees and PG&E.

103.    Because of the dispute created by the Liberty Mutual Defendants' actions, Trees has incurred, continues to incur, and will in the future incur attorney's fees and expenses to prove its coverage rights under the Liberty Policies.  The Liberty Mutual Defendants are liable to Trees for all such fees and expenses.

### THIRD CAUSE OF ACTION—TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST THE LIBERTY MUTUAL DEFENDANTS

104.    Trees re-allege and incorporate by reference the averments contained in Paragraphs 1-103, *supra*.

105.    In every contract of insurance, including without exception the Primary Policy and the Umbrella Policy, there is an implied covenant of good faith and fair dealing, that the insurance company will do nothing to interfere with the right to receive benefits under the insurance policy, that the insurance company will give fair weight and at least as much consideration to the interests of the insured as it does for its own interests, that the insurer will not elevate the interests of one insured over another insured, that the insurer will exercise diligence, good faith, and fidelity in safeguarding the insured's interests, that it will deal ethically with the insured and will fairly and adequately inform the insured with respect to the nature and scope of its insurance

coverage, and that it will communicate important information openly and transparently, particularly when a proposed action may impact the benefits provided under a policy (hereinafter referred to as the "covenant of good faith and fair dealing."

106.  Liberty Mutual and Liberty each owe a duty of good faith and fair dealing to Trees under their respective insurance policies, for which Trees paid substantial premiums.

107.  The Liberty Mutual Defendants breached the covenant of good faith and fair dealing by, *inter alia*:  failing to respond appropriately or in a timely manner to demands made by Trees and PG&E; attempting unilaterally to make improvident and unnecessary indemnity payments to PG&E to try to transfer to Trees the expensive defense and indemnity obligations that the Liberty Mutual Defendants agreed to undertake by way of the Liberty Policies; seizing Trees' funds without notice or explanation for payment of a deductible that was not due; ignoring correspondence and telephone conversations with representatives of Trees, including requests for more open communications and evidence relevant to coverage; disregarding evidence that indemnity payments to PG&E were not necessary or were premature; interpreting the policies and contract in unreasonable and self-serving ways; failing to explain a good faith rationale for their bad faith conduct; and willfully choosing not to resolve the dispute with Trees and PG&E using methods (like an impleader in this dispute or the *Butte Fire* Litigation) that would have protected Trees and ensured continued payment of defense costs through the judicial resolution of the issue. The Liberty Mutual Defendants' self-dealing behavior seeks to destroy the benefit of the insurance bargain struck with Trees.

108.  The Liberty Mutual Defendants' actions were unreasonable, wrongful, and knowingly/consciously made in disregard to the rights of Trees, demonstrating malice and/or oppression as defined in California Civil Code Section 3294, and with deliberate intent to vex, injure, and annoy Trees so as to deprive it of its rights and protections under the Liberty Policies. The Liberty Mutual Defendants were repeatedly advised that their conduct was wrongful by Trees, but they persisted in acting in bad faith towards Trees, refused to change their behavior, and continue their bad faith effort to shift costs from themselves to their policyholder, Trees.

Such conduct warrants the imposition of punitive and exemplary damages in an amount sufficient to punish and make an example of Liberty Mutual and Liberty in order to deter such conduct in the future.

109.    These insurance companies' conduct is inconsistent with Trees' reasonable expectations, contrary to insurance industry custom and practice, contrary to legal requirements, and constitutes bad faith.

110.    As a proximate result of the Liberty Mutual Defendants' breaches of the covenant of good faith and fair dealing, Trees has been damaged in an amount in excess of this Court's jurisdictional limit, including without limitation being forced to pay $5 million unnecessarily; having policy proceeds reduced prematurely in the amount of $10 million; being forced to face further demands by PG&E prematurely; and being forced to defend against the Liberty Mutual Defendants' attempt to shift the burden of responsibility for PG&E's defense from themselves to Trees and other insurers of Trees.  Additionally, Trees has sustained and will continue to sustain attorney's fees and costs in this coverage action against the Liberty Mutual Defendants, as well as lost interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trees hereby demands the entry of judgment in its favor and against Defendants Liberty Mutual and Liberty on all of the claims in the Complaint, together with an award of interest, costs, attorney's fees, punitive and exemplary damages, and such other and further relief that the Court deems appropriate, as follows:

## WITH RESPECT TO THE FIRST CLAIM FOR RELIEF

1.    For money damages, plus pre-judgment and post-judgment interest, attorney's fees and costs, and all other compensatory damages according to proof at the time of trial.

## WITH RESPECT TO THE SECOND CLAIM FOR RELIEF

1.    For a declaration that Liberty Mutual and Liberty (and not Trees) are responsible for defense costs incurred by PG&E, as well as for the costs paid to PG&E for indemnification of settlements.

**WITH RESPECT TO THE THIRD CLAIM FOR RELIEF**

1.    All of the above requested relief, money damages, pre-judgment and post-judgment interest, attorney's fees, costs, and all other compensatory damages according to proof at the time of trial.

2.    Punitive and exemplary damages in an amount to be determined at trial.

3.    All such other and further relief as the Court may deem just and proper.


DATED:   August 16, 2017          By:  /s/ David E. Weiss
                                       DAVID E. WEISS (SBN 148147)
                                       JOHN N. ELLISON (*pro hac vice to be filed*)
                                       SHRUTI D. ENGSTROM (*pro hac vice to be filed*)
                                       REED SMITH LLP

                                       Attorneys for Plaintiff
                                       TREES, INC.